UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEBRA L. WHITELOW,

                Plaintiff,

v.                                             Case No.  5:07-cv-484-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.

_____/

## <u>ORDER</u>

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 15) and both parties have filed briefs outlining their respective positions. (Docs. 18 & 22.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. <u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for a period of disability and disability insurance benefits (R. 71-77) claiming a disability onset date of January 14, 2001.  Plaintiff's application was denied initially and upon reconsideration. (R. 43-47.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 42.)  ALJ Jimmy N. Coffman conducted Plaintiff's administrative hearing on February 8, 2004. (R. 21-33.)  At the hearing, Plaintiff was represented by legal counsel, William G. McLean,

Jr. (R. 23.)  On September 21, 2004, ALJ Coffman issued a decision partially favorable to Plaintiff. (R. 12-17.)  On September 26, 2005, the Appeals Council denied Plaintiff's request for review. (R. 3-5.)  Plaintiff then appealed to this Court. (Doc. 1, Case No. 5:05-cv-477-Oc-10GRJ.)  On the motion of the Commissioner, the Court remanded the case to the Commissioner on several grounds, including for the ALJ to perform a proper evaluation of the objective evidence in accordance with the appropriate legal standards regarding medical improvement. (R. 369-72.)  The Appeals Council remanded the case to ALJ Douglas Walker. (R. 376-78.)

On May 21, 2007, ALJ Douglas Walker conducted a supplemental hearing.  (R. 617-30.)  Plaintiff was represented by legal counsel, Albert N. Bacharach, Jr.  On September 13, 2007, ALJ Walker issued a partially favorable decision finding that Plaintiff was disabled beginning on January 14, 2001 and ending on October 30, 2002 and beginning again on July 23, 2006. (R. 350-65.)  After exhausting her administrative remedies, Plaintiff filed the instant appeal, challenging the denial of benefits between October 30, 2002 and July 22, 2006.

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

---

[1] <u>See</u> 42 U.S.C. § 405(g).

relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to

---

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such

---

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on July 31, 1959 and was 47 years old at the time of the supplemental hearing. (R. 620.)  Plaintiff has a high school education (R. 89) and has worked as a trimmer for mobile homes. (R. 84.)  Plaintiff contends that, as of January 14, 2001, she was no longer able to work due to a back injury and depression. (R. 83, 397.)

On July 7, 1998, Plaintiff fell at work and injured her lower back.  Over the next few years, Plaintiff saw numerous doctors and was treated with physical therapy and medication. (139-41, 278-83, 284-305.) She was diagnosed with L5-S1 Grade 1 spondylolisthesis and on May 16, 2002, Antonio DiScalfani, M.D. performed a Lumbar Laminectomy and Foraminotomies at L4, L5 and S1; posterior interbody fusion at L5-S1; local autograft spacers at L5-S1; and pedicle screw fixation at L5-S1. (R. 161-72.)

On May 30, 2002, Domingo Cerra, M.D. performed an independent medical evaluation. (R. 178-81.)  His diagnostic impression was Major Depressive Episode, Single, Without Psychotic Features; Rule out Mood Disorder or Depressed, Secondary to General Medical Condition; Alcohol Abuse, Chronic; Partner Relational Problem; Cervical Low Back Pain, Status Post Recent (05/16/02); L5-S1 Posterior Lumbar Interbody Fusion with Pedicle; Screw Fixation at L5-S1 (still recuperating from surgery);

---

[20] See id.

[21] See Doughty at 1278 n.2.

6

hysterectomy; problems with primary support group; and assigned her with a GAF of 60 to 51.  Dr. Cerra opined that the current psychiatric symptoms were partially causally related to the industrial injury of July 7, 1998 and that Plaintiff was not at MMI from a psychiatric standpoint.  He further noted that "[p]sychiatric treatment is medically necessary; but before receiving such, patient must be alcohol and drug free.  He recommended intensive outpatient treatment and psychological testing.

On October 29, 2002, Paula Lovett, Ph.D. performed a consultative evaluation. (R. 334-39, 606-11.)   Plaintiff reported back pain and muscle spasms in her back, legs and feet but noted that surgery had lessened her radicular leg symptoms.  Plaintiff reported depressive symptoms including crying more than once a day, loss of interest in previously enjoyable activities, isolation and feelings of hopelessness and helplessness. Upon examination, it was noted that Plaintiff was alert and reality based; her thought processes were logical and coherent; the content of her thought was unremarkable and appropriate; no indication of the presence of delusions or compulsions; her attention and concentration skills were normal; she was oriented to person, place, and time; and there was no evidence of cognitive deficits.

Dr. Lovett administered a number of assessments.  Plaintiff's score on the Beck Depression Inventory was indicative of severe depressive symptoms and Plaintiff's performance on the Minnesota Multiphasic Personality Inventory-2 was deemed valid and suggestive of an individual overstating problems in a plea for help, and indicative of an individual with depressive symptoms and somatic concerns.

Based on the mental status interview and assessments, Dr. Lovett opined that Plaintiff was experiencing an Adjustment Reaction with Depressed Mood.  A treatment

plan was recommended, including weekly sessions with instruction in cognitive behavioral pain management techniques to assist in the management of chronic pain. It was further noted that the treatment providers would work to help Plaintiff increase her emotional coping skills in an attempt to reduce symptoms of depression and anxiety. The treatment providers also concurred with Dr. Cerra's recommendation that "psychiatric treatment is medically necessary" and requested that Plaintiff be evaluated and followed by a psychiatrist.  Dr. Lovett's diagnostic impressions were as follows:

| | | |
|---|---|---|
| AXIS I | 309.00 | Adjustment Reaction with Depressed Mood |
| AXIS II | 799.90 | Deferred |
| AXIS III | | Status post 05/01/02 L5-S1 posterior lumbar interbody fusion with pedicle screw fixation at L5-S1; Chronic low back pain |
| AXIS IV | | Vocational and relationship dysfunction, financial stressors |
| AXIS V | | Current GAF 51-55 |

The doctors opined that Plaintiff's depressed mood is at least partially causally related to her July 7, 1998 work injury.  They found "no current psychological work restrictions" and noted that Plaintiff "should not be considered at MMI for this recommended psychological treatment."

Dr. Lovett conducted individual psychotherapy with Plaintiff from November 25, 2002 through January 11, 2003.  (R. 612-16.)  Plaintiff consistently reported depression, back pain, isolation and crying spells.  Plaintiff reported that Dr. Hunter prescribed Celexa but that it was not particularly helpful with her symptoms of depression and

occasional crying. On February 25, 2003, Dr. Lovett noted "[i]t remains my opinion that psychiatric intervention is medically necessary." (R. 605.)

On November 26, 2002, Plaintiff was referred by Dr. DiScalfani to Oregon Hunter for a comprehensive medical evaluation. (R. 268-71.) On examination, Dr. Hunter noted moderate paravertebral spasms and moderate tenderness to palpation and moderately restricted range of motion in the lumbar spine. He also noted that Plaintiff's gait and station were normal and that she had good range of motion in her four extremities and cervical spine. Dr. Hunter diagnosed Plaintiff with chronic low back pain syndrome; L5-S1 grade I spondylolisthesis; status post lumbar surgery; slightly elevated systolic blood pressure; and depression. He prescribed Lortab for pain, Soma for muscle spasm and Celexa. He recommended a follow-up with Dr. Lovett, a consultation with a psychiatrist and that the Plaintiff should consider evaluation for physical therapy. On December 24, 2002, Plaintiff returned to Dr. Hunter. Dr. Hunter diagnosed Plaintiff with chronic intractable pain syndrome; LF-S1 grade 1 spondylolisthesis with 5/16/02 surgical intervention. Dr. Hunter noted that Plaintiff was extremely frustrated by her chronic pain. Dr. Hunter advised Plaintiff that he was "unable to continue treatment. Medications have not been helping. She is not compliant with dosing. She indicated that she was ready to leave and walked out of the room."(R. 265.)

On January 14, 2003, a non-examining state agency psychologist, Steven L. Wise, Psy.D. completed a Psychiatric Review Technique. (R. 306-19.) Based on his review of the medical records, Wise found that Plaintiff's affective disorders were not severe.

On January 17, 2003, a non-examining state agency doctor, Eric C. Puestow, M.D. completed a Physical Residual Functional Capacity Assessment. (R. 320-27.) Based on his review of the medical records, Puestow found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk and sit for a total of 6 hours in an 8-hour workday and push and/or pull without limitation. Puestow found that Plaintiff could frequently balance and kneel but only occasionally climb, stoop, crouch and crawl.

From April 2004 through June 2004, Plaintiff received treatment at the Health Department clinic for back pain and depression and was prescribed a number of medications, including Prozac. (R. 427-31.) From November 2004 through May 2005, Plaintiff was treated by Burke L. Jackson, M.D. at ExpressCare. (R. 432-40.) In his treatment notes, Dr. Jackson consistently diagnosed Plaintiff with chronic back pain, depression and anxiety. In December 2004, Dr. Jackson completed an "Excuse Slip" in which he noted that Plaintiff was unable to return to work at that time due to back pain. (R. 433.) In a note dated May 25, 2005, Dr. Jackson wrote that Plaintiff has "intractable back pain"; experiences "much difficulty sitting, standing, and walking"; and "is unable to lift more than 10 pounds without experiencing excoriating back pain." (R. 432.)

On December 13, 2005, Gary Honickman, Ph.D. performed a general clinical evaluation with mental status. (R. 441-42.) Plaintiff reported chronic back pain, depression and anxiety and that she was taking Zoloft, Darvocet, Xanax, and Flexeril. During the mental status evaluation, Plaintiff was oriented in all spheres but her mood and affect were moderately depressed and she cried. Her thought processes were

organized but the content was depressive.  Dr. Honickman opined that Plaintiff appears to suffer from a Dysthymic Disorder, DSM IV 300.40.

On December 16, 2005, Edward L. Demmi, M.D. performed a consultative evaluation. (R. 443-46.)  Plaintiff reported that she was diagnosed with anxiety in 2004, for which she takes Xanax, although she does not think that it is helping.  She stated that her current symptoms include shortness of breath, fear and difficulty sleeping. Plaintiff reported that her depression includes isolation and crying spells.  She reported that she only leaves her house once a month due to her depression and anxiety.   As for her back pain, Plaintiff reported that it has worsened since her surgery and that she has numbness and tingling in her lower extremities and pinching in her back with radiation of pain into her legs.  She stated that she constantly has to change positions when she tries to sit, that she can stand for 5 to 10 minutes before her back pain is aggravated and that she cannot walk without pain.  Plaintiff reported taking Flexeril and Darvocet for her back pain.

On examination, Plaintiff was agitated, avoided eye contact and had a crying spell that lasted approximately 30 seconds.  Plaintiff's back was tender to touch.  Her cervical range of motion was normal and lumbar flexion and extension were limited. Sensory and reflex findings were normal, no muscle spasms were noted and straight and seated leg raises were normal.  Strength was 5/5 throughout with the exception of the right grip strength which was decreased to 4/5.   Plaintiff's gait was normal and she walked without assistance and could perform heel-to-toe.  Plaintiff was able to squat with assistance upon arising.  Dr. Demmi's diagnostic impression was chronic low back pain, depression and anxiety.

Beginning December 15, 2005, Plaintiff received treatment at The Centers' Medication Clinic. (R. 495-513).   On December 15, 2005, it was noted that Plaintiff was diagnosed with depression since 2001 triggered by her work injury and that she complains of crying, isolation, and paranoid thoughts. (R. 506.) Plaintiff was prescribed Zoloft[22] and Rispardel.[23]  On January 13, 2006, Plaintiff reported sleep problems and anxiety; she was prescribed Seroquel[24] because she reported Rispardel made her sick. (R. 502.)   On February 13, 2006, Plaintiff reported feeling less depressed on Zoloft and that Seroquel helped her sleep but that she was still having paranoid thoughts. (R. 501.) On March 13, 2006, the doctor increased both medications after Plaintiff reported that the medications were not working as well and that she was worried and anxious and that "she has to hide when cars go by." (R. 500.)   On May 15, 2006, Plaintiff reported that she "she feels the same",  feels "would up too tight".  She reported that her anxiety and depression were not any better on Zoloft; that it felt as though "a rod must have slipped" in her back; and that she was being paranoid and hid when cars drove by.  (R. 499.)  Plaintiff was prescribed an increased dosage of Seroquel, as well as Effexor[25] and Klonopin.[26]  On June 15, 2006, Plaintiff reported having a "rough month" and had a

---

[22] Zoloft is used to treat depression and anxiety conditions.  See www.zoloft.com.

[23] Risperdal is used to treat schizophrenia and bipolar mania. See www.risperdal.com.

[24] Seroquel is used to treat schizophrenia and bipolar disorder.  See www.seroquel.com.

[25] Effexor is prescribed for the treatment of depression, anxiety disorder, panic disorder and social anxiety disorder.  See www.effexorxr.com

[26] Klonopin is prescribed for the treatment of panic disorders and seizure disorders. See www.rocheusa.com.

(continued...)

reaction to Effexor.  (R. 498.)  Plaintiff reported feeling lousy and not wanting to get up in the morning.  Plaintiff was prescribed an increased dosage of Seroquel, as well as Lexapro,[27] and Klonopin.

On July 23, 2006, Plaintiff was admitted to Ocala Regional Medical Center with respiratory failure secondary to pneumonia and altered mental status  (R. 514-602.) The hospital records state that Plaintiff's mother found her unresponsive and slumped in her home and called EMS.   Plaintiff was discharged on August 3, 2006 with a prescription for Seroquel.  (R. 542-43.)  The hospital records reflect that Plaintiff's past medical history is "significant for schizophrenia, paranoid type; hypertension; chronic back pain; anxiety and depression." (R. 542.)

On October 10, 2006, Plaintiff returned to the Centers and stated that she has "been better" and continued to complain of depression.  (R. 497.)  Plaintiff continued on Seroquel, and was also prescribed Pexeva[28] and Klonopin.  On November 13, 2006, Plaintiff reported feeling "the same. (R. 496.)  On January 11, 2007, Plaintiff returned to the Centers. (R. 495.)  The progress note states that Plaintiff has "Major Depression, recurrent, severe, without psychotic features", chronic back and neck pain and economic, health and occupational problems and assigned a GAF score of 42.  Plaintiff

---

[26](...continued)

[27] Lexapro is prescribed for the treatment of depression and generalized anxiety disorder. See www.lexapro.com.

[28] Pexeva is prescribed for the treatment of depression, obsessive/compulsive disorder and/or panic disorder.  See www.pexeva.com.

was continued on the same medications, although her dosage of Pexeva was increased and she was prescribed Buspar.[29] (R. 495.)

On January 3, 2006, a non-examining state agency doctor, Alan J. Harris, Ph.D. completed a psychiatric review technique. (R. 447-460.) Harris found that Plaintiff's affective disorders were not severe and caused only mild limitations. On April 3, 2006, another non-examining state agency doctor, Michael Zelenka, completed a psychiatric review technique. (R. 469-482.) Based on his review of the records, Zelenka opined that Plaintiff's affective disorders and anxiety-related disorders resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and one or two episodes of decompensation. Zelenka also completed a Mental RFC Assessment in which he found Plaintiff to be moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to interact appropriately with the general public. (R. 483-86.)

On January 5, 2006, a non-examining state agency doctor, L. Rivers completed a physical RFC assessment. (R. 461-68.) Based on a review of the medical records, Rivers found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds,

---

[29] BuSpar is prescribed for the treatment of anxiety disorders. See http://packageinserts.bms.com/pi/pi_buspar.pdf.

stand and/or walk and sit for a total of 6 hours in an 8-hour workday, and push and pull without limitation. On April 5, 2006, a second non-examining state agency doctor, Eric Puestow, completed a physical RFC assessment finding the same limitations, and also limiting Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 487-94.)

At the hearing on March 21, 2007, the ALJ advised Plaintiff that "we've only got 15 minutes for this hearing." (R. 620.) Plaintiff was first questioned by her counsel. Plaintiff testified that due to her work-related injury she has a constant stiff neck, shoulder pain, back pain that radiates down her legs, and pain in her wrist and fingers. (R. 621-22, 626.) Plaintiff testified that she can only sit ten to thirty minutes at a time and stand for twenty minutes at a time. (R. 622.) Plaintiff testified that if she stands for more than twenty minutes, her left leg will go numb and she uses a cane to prevent falls. (Id.) Plaintiff testified that she had been using the cane for a few months and that it had not been prescribed by a doctor. (Id.) Plaintiff testified that she is still suffering from depression and that she cries a lot, has a hard time leaving the house, has panic attacks in her car or if cars drive by and the passengers stare at her, and only leaves her yard about two times per month. (R. 623-24.) Plaintiff testified that on a typical day she feeds her pets and does the dishes and laundry. (R. 625.) At the conclusion of his questioning, Plaintiff's counsel advised the Court, "I believe the record's complete." (R. 626.)

The ALJ then asked Plaintiff a few questions. Plaintiff testified that she has a drivers license but that Dr. Sammy advised her not to drive due to her medications. (R.

626.)  Plaintiff testified that her treatment at the Centers had helped with the depression but her anxiety level and nervousness were still "really bad." (R. 629.)

The ALJ determined that claimant suffers from degenerative disc disease of the lumbar spine status post laminectomy and depression.  (R. 354.)   However, the ALJ determined that from January 14, 2001 through October 29, 2002, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.)

The ALJ then found that from January 14, 2001 through October 29, 2002, Plaintiff retained the RFC to lift and carry 10 pounds frequently, stand and/or walk 1 hour in an 8-hour workday, and sit about 2 hours in an 8-hour workday with the ability to change positions as needed and no pushing or pulling over 10 pounds and no repetitive movement using her left lower extremity. (R. 355.)  Plaintiff was to avoid heights and hazardous machinery and was limited to simple routine work.  (Id.)  The ALJ concluded that Plaintiff was disabled because she was unable to perform her past relevant work as a trimmer and there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (R. 357-58.)

However, the Court found that Plaintiff experienced medical improvement beginning on October 30, 2002 and that the improvement was related to her ability to work. (R. 358.) The ALJ found that beginning on October 30, 2002, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 359.)   The ALJ then found that beginning on October 30, 2002, Plaintiff had the RFC to perform light work except that she was limited to simple routine work.  (Id.)  The ALJ

16

concluded that from October 30, 2002 until July 23, 2006, Plaintiff could not perform her past relevant work.  Relying on Medical-Vocational Rule 202.21, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. (R. 363.)

Beginning on July 23, 2006, the ALJ found that Plaintiff had the RFC to perform light work except that she could not sustain the mental demands of competitive work on a continuing basis, 8 hours a day 5 days a week. (R. 363.) The ALJ then concluded that beginning on July 23, 2006, Plaintiff was disabled because there were not a significant number of jobs in the national economy that Plaintiff could perform.  (R. 364.) Accordingly, this appeal focuses on the denial of benefits between October 30, 2002 and July 22, 2006.

## IV.  DISCUSSION

The focus of Plaintiff's challenge to the Commissioner's decision is two-fold. First the Plaintiff claims that her due process rights were violated because the hearing was not long enough. Second, the Plaintiff claims that the ALJ erred by concluding that Plaintiff's medical condition improved so that she was no longer disabled as of October 30, 2002. As discussed below, both of these arguments are without merit and do not require reversal of the decision of the ALJ.

However, because the ALJ found that Plaintiff became disabled again on July 23, 2006 when she was hospitalized, the Court is required to consider whether the ALJ's conclusion that Plaintiff was not disabled between October 30, 2002 and July 23, 2006 is supported by substantial evidence. For the reason addressed in section C of this Order, the Court concludes that the ALJ erred by concluding that Plaintiff became

disabled again on July 23, 2006 - and not before that date - without evaluating the medical evidence from December 2005 until the Plaintiff's hospitalization on July 23, 2006.

**A.    The ALJ Did Not Violate Plaintiff's Due Process Rights By Limiting Post-Remand Hearing To Fifteen Minutes**

Plaintiff argues that the ALJ violated Plaintiff's due process rights because he limited the post-remand hearing to fifteen minutes.   However, the duration of the hearing, in and of itself, does not provide a basis for reversal and Plaintiff has failed to point to any alleged prejudice resulting from the short duration of the hearing or point to any evidence or argument she was not permitted to present.  The lack of merit in this argument is underscored by the fact that  Plaintiff was represented by counsel at the hearing and after questioning Plaintiff, Plaintiff's counsel expressly told the Court, "I believe the record's complete." (R. 626.)  Accordingly, Plaintiff's first argument is without merit.

**B.    The ALJ's Finding That Plaintiff Reached Medical Improvement As Of October 30, 2002 Was Supported By Substantial Record Evidence**

The ALJ concluded that as of October 30, 2002, Plaintiff was no longer disabled and regained the RFC to perform simple routine light work.  In concluding that Plaintiff reached medical improvement as of October 30, 2002, the ALJ relied on two pieces of evidence.  First, the ALJ found that by October 30, 2002, Plaintiff had sufficiently recovered from her lumbar surgery based on the November 2002 treatment notes from Dr. Hunter. (R. 268-71.)  While Dr. Hunter noted moderate paravertebral spasms and moderate tenderness to palpation and moderately restricted range of motion in the

lumbar spine, he also noted that Plaintiff's gait and station were normal and that she had good range of motion in her four extremities and cervical spine. On December 24, 2002, Dr. Hunter discharged Plaintiff from his practice noting that she was extremely frustrated by her chronic pain but that he was unable to continue treatment, that the medications have not been helping and that Plaintiff was not compliant with dosing.

Dr. Hunter's treatment notes were consistent with the January 17, 2003, Physical RFC Assessment completed by a non-examining state agency doctor who opined that Plaintiff could perform light work but was limited to occasional climbing, stooping, crouching and crawling. (R. 320-27.)

Second, the ALJ relied upon the October 29, 2002 mental status examination performed by Dr. Lovett. (R. 334-39, 606-11.) During the examination, Plaintiff reported back pain and muscle spasms in her back, legs and feet but noted that surgery had lessened her radicular leg symptoms. Plaintiff reported depressive symptoms including crying more than once a day, loss of interest in previously enjoyable activities, isolation and feelings of hopelessness and helplessness. However, on examination, it was noted that Plaintiff was alert and reality based; her thought processes were logical and coherent; the content of her thought was unremarkable and appropriate; there was no indication of the presence of delusions or compulsions; her attention and concentration skills were normal; she was oriented to person, place, and time; and there was no evidence of cognitive deficits. Additionally, while Dr. Lovett opined that Plaintiff continued to need psychotherapy, she found that Plaintiff had no current psychological work restrictions. Moreover, Dr. Lovett 's opinion was consistent with the opinion of the

non-examining state agency psychologist, Steven L. Wise, Psy.D. who found that Plaintiff's affective disorders were not severe. (R. 306-19.)

Accordingly, based on the above, the ALJ's finding that Plaintiff reached medical improvement as of October 30, 2002 was supported by substantial record evidence.

## C. The ALJ's Conclusion That Plaintiff Was Not Disabled Prior To July 22, 2006 Was Not Supported By Substantial Record Evidence

There is no challenge to the ALJ's finding that Plaintiff became disabled again and there is no challenge to the conclusion that after Plaintiff was admitted to Ocala Regional Medical Center with respiratory failure secondary to pneumonia and altered mental status (R. 514-602) that she was disabled. There is a dispute, however, as to whether Plaintiff became disabled again prior to July 23, 2006. However, the ALJ made this finding without considering the medical evidence beginning in December 2005 related to Plaintiff's mental status.[30]

On December 13, 2005, Gary Honickman, Ph.D. performed a general clinical evaluation with mental status. (R. 441-42.) Plaintiff reported chronic back pain, depression and anxiety and that she was taking Zoloft, Darvocet, Xanax, and Flexeril. During the mental status evaluation, Plaintiff was oriented in all spheres but her mood and affect were moderately depressed and she cried. Her thought processes were

---

[30] The last evidence considered by the ALJ was the opinion of Dr. Jackson, who treated Plaintiff from November 2004 through May 2005. (R. 432-40.) On May 25, 2005, Dr. Jackson noted that Plaintiff has "intractable back pain"; experiences "much difficulty sitting, standing, and walking"; and "is unable to lift more than 10 pounds without experiencing excoriating back pain" (R. 432) and in December 2004 he noted that Plaintiff was unable to return to work at that time due to back pain. (R. 433.) The ALJ accorded no weight to Dr. Jackson's opinion that Plaintiff could not work because such an opinion is reserved to the Commissioner. Additionally, the ALJ found that Dr. Jackson's opinions were not supported by his treatment notes which reflected nothing more than musculoskeletal tenderness and the notes do not reflect any activity limitations. The ALJ's decision to accord no weight to Dr. Jackson's opinion was supported by substantial record evidence.

organized but the content was depressive.  Dr. Honickman opined that Plaintiff appears to suffer from a Dysthymic Disorder, DSM IV 300.40.

On December 16, 2005, Edward L. Demmi, M.D. performed a consultative evaluation. (R. 443-46.)  Plaintiff reported depression and anxiety resulting in shortness of breath, fear and difficulty sleeping, isolation and crying spells.  She reported that she only leaves her house once a month due to her depression and anxiety.   As for her back pain, Plaintiff reported that it has worsened since here surgery and that she has numbness and tingling in her lower extremities and pinching in her back with radiation of pain into her legs.  She stated that she has to constantly change positions when she tries to sit, that she can stand for 5 to 10 minutes before her back pain is aggravated and that she cannot walk without pain.  Plaintiff reported taking Flexeril and Darvocet for her back pain.  Dr. Demmi's diagnostic impression was chronic low back pain, depression and anxiety.

Beginning December 15, 2005 until the time she was admitted to the hospital, Plaintiff received treatment at The Centers' Medication Clinic on a monthly basis. (R. 495-513).  Plaintiff consistently reported depression, crying, isolation, paranoid thoughts, anxiety and was prescribed numerous medications for depression, anxiety, panic disorders, bipolar disorders and schizophrenia. Despite the fact that the progress notes beginning in December 2005 contain consistent and on-going evidence of significant psychological and mental problems the ALJ did not address any of this evidence and instead simply concluded that Plaintiff became disabled again on July 23, 2006 when she was hospitalized for among other reasons "altered mental status."

Because the ALJ failed to consider and evaluate the medical evidence concerning Plaintiff's psychological condition beginning in December 2005 and culminating in Plaintiff's hospitalization, his conclusion that Plaintiff became disabled on July 23, 2006 – and not before that date – was not based upon the substantial evidence on the record as a whole. Accordingly, on remand, the ALJ should re-consider Plaintiff's mental RFC by evaluating the medical evidence concerning Plaintiff's mental conditions beginning in December 2005. After evaluating the medical evidence concerning Plaintiff's mental RFC the ALJ should fully explain the basis for determining when the Plaintiff became disabled again. And if the ALJ concludes that Plaintiff's disability did not begin again until July 23, 2006, the ALJ should fully discuss the medical evidence supporting this conclusion.

## V. <u>CONCLUSION</u>

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to consider the medical evidence beginning in December 2005 to determine whether Plaintiff became disabled prior to July 23, 2006 and to conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on February 4, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel