UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEBRA L. WHITELOW,

                Plaintiff,

v.                                                     Case No. 5:07-cv-484-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## **ORDER**

Pending before the Court is Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice Act. (Doc. 27.) The Commissioner has filed a response in opposition (Doc. 29) and, therefore, this matter is ripe for review. For the reasons discussed below, Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice Act is due to be **GRANTED**.

## **DISCUSSION**

Plaintiff requests an award of attorney's fees in the amount of $2,554.41. The total for attorney fees is confirmed by the schedule of hours and declaration attached to Plaintiff's motion. Plaintiff asserts that she is the prevailing party in this litigation, and that the Commissioner's position in the underlying action was not substantially justified. Plaintiff also states that Plaintiff's net worth at the time the proceeding was filed was less than two million dollars.[1] On February 4, 2009, the Court entered an Order

---

[1] Under the EAJA, a claimant is eligible for an attorney fee award where: (1) the claimant is a prevailing party in a non-tort suit involving the United States; (2) the Government's position was not substantially justified; (3) the claimant filed a timely application for attorney's fees; (4) the claimant had a
(continued...)

reversing and remanding this cause back to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 23.) On February 5, 2009, the Clerk entered judgment. (Doc. 24.) On April 27, 2009, Plaintiff timely filed her petition for attorney's fees.[2]

The Commissioner objects to the request on the grounds that the requested hourly rates for 2008 and 2009 are too high and not consistent with the market rate. The Commissioner urges the Court to adopt the reasoning reflected in *Coffman v. Astrue*—a case recently decided in the Middle District of Florida—which held that a rate in excess of $170.00 for hours expended in 2008 is excessive.[3]

Judge Wilson's rationale in *Coffman* for reducing the hourly rate was that an hourly rate of more than $170 was "patently beyond the bounds of reason" because it was higher than the maximum rate paid for the "far more demanding and challenging" work of criminal defense attorneys in capital cases in 2008." In *Coffman*, the Court justified its decision to cap fees at the rate of $165 per hour by comparing the fees awarded pursuant to the EAJA fee-shifting statute to the compensation of court appointed attorneys in capital cases pursuant to the Criminal Justice Act ("CJA"). While there is an appealing and common sense logic to Judge Wilson's reasoning in *Coffman*,

---

[1](...continued)
net worth of less than $2 million at the time the complaint was filed; and (5) there are no special circumstances which would make the award of fees unjust. 28 U.S.C. § 2412(d).

[2] (Doc. 27.) Plaintiff must file an application for fees and other expenses within thirty (30) days of the "final judgment" in the action, which is defined as a judgment that is "final and not appealable." 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G). According to the Federal Rules of Appellate Procedure, the judgment becomes "final" upon the expiration of the sixty (60) day period following judgment within which the Commissioner may appeal. *See* FED. R. APP. P. 4(a)(1)(B).

[3] *See* Coffman v. Astrue, No. 8:07-cv-1416-T-TGW, 2008 WL 5137956 (M.D. Fla. Dec. 5, 2008) (declining to award more than $165.00 per hour for work done in 2008).

in the Court's view there is a fundamental difference between the rationale for awarding fees under the EAJA and for the fee cap under the Criminal Justice Act.

The EAJA on the one hand is a fee-shifting statute intended to encourage private litigation implementing important public policies. Its express provision granting courts the discretion to implement upward adjustments to account for inflation demonstrates the Congressional intent that the EAJA's "maximum" statutory rates should be—subject to the Court's discretion—adjusted over time. The EAJA is, therefore, designed to provide private individuals with "equal access" to the judicial system where it is necessary to enforce important rights against the government and by its express terms is designed to adjust over time consistent with increased costs of living. It is not, however, designed to be pegged to a rate equal to the prevailing market rate.

This view is reflected in the process for determining the hourly rate to be applied to fees requested under the EALA. As the Commissioner correctly points out under the EAJA the Court does not simply determine the appropriate market rate but rather engages in a two-step process.[4] The first step in the analysis is to determine the prevailing market rate for the kind and quality of services furnished.[5] The second step—which is necessary only if the prevailing market rate is greater than the $125.00 per hour statutory ceiling—is to determine whether the court should adjust the hourly

---

[4] Gates v. Barnhart, 325 F. Supp. 2d 1342, 1345 (M.D. Fla. 2002) (citing Meyer v. Sullivan, 958 F.2d 1029, 1033-34 (11th Cir. 1992)).

[5] Id.

rate upward from the ceiling to take into account an increase in the cost of living or a special factor.[6]

As such, even if the Court was to follow the reasoning of *Coffman* and compare the hourly rates between a criminal defense lawyer appointed under the CJA in a capital case with the hourly rate of a lawyer representing a claimant in a Social Security case, the comparison is only relevant to whether the market rate is more than $125.00 per hour and not to what should be the cap for the hourly rate. The cap already has been set by Congress at the rate at $125.00 per hour, subject to an upward adjustment by the Court to account for the increase in the cost of living. This adjustment, however, is based upon an index and is not based upon what the Court believes should be an appropriate hourly rate.

There is no serious dispute that the prevailing hourly rate for experienced lawyers practicing in federal court—whether in capital criminal cases or any type of civil litigation—is well in excess of $125.00 per hour. Thus, under the EAJA once the Court determines that the market rate is more than $125.00 per hour the Court does not then need to determine what should be the cap for the hourly rate. Rather, the Court is only required to determine whether to adjust the rate based upon an increase in the cost of living index. This determination is purely a mathematical computation based upon the application of the appropriate cost of living index.

---

[6] Gates, 325 F. Supp. 2d at 1345.

In sum, even assuming a $175.00[7] per hour cap on hourly rates for capital cases under the CJA was relevant for the purpose of determining the market rate, because the rate is well in excess of the EAJA statutory cap of $125.00, it is irrelevant to the mathematical calculation of the rate adjusted for inflation.

Secondly—and separate from the fact that the CJA rate is irrelevant to the second step in the EAJA analysis—the CJA rate is not an appropriate benchmark for determining the market rate for EAJA fees in the first place. The payment of fees under the CJA is designed to ensure that individuals charged with crimes are afforded their constitutional right to be represented by a lawyer. Thus, the purpose of the statute is entirely different from the EAJA. Moreover, the maximum rate set forth in the CJA was carefully considered and found to be "a reasonable basis upon which lawyers could carry out their profession's responsibility to accept court appointments . . . [despite being] below normal levels of compensation in legal practice."[8] Thus, the cap on the hourly rate set by Congress is not even a standard that is based upon the market rate for criminal defense lawyers. Rather, the cap on hourly rates under the CJA is ultimately a matter of public policy and such matters are best left to Congress.[9]

Accordingly, in the Court's view because the disparity in the hourly rates for payment of attorneys under the CJA and under the EAJA are based upon completely

---

[7] The hourly rate under the CJA for capital cases recently was increased from $170.00 per hour to $175.00 per hour.

[8] H.R. REP. NO. 88-864 (1963).

[9] *See* Reeves v. Astrue, 526 F.3d 732, 738 (11th Cir. 2008) ("[P]olicy decisions are properly left to Congress, not the courts.") (citing Artuz v. Bennett, 531 U.S. 4, 10 (2000)).

5

different policy considerations and entirely different purposes, and involve a different analytical framework, the Court declines to apply the reasoning of *Coffman* to reduce the hourly rate for 2008 and 2009 in Plaintiff's fee application. Therefore, Plaintiff's request for fees at an hourly rate of $171.77 for hours expended in 2008 and $174.00 for hours expended in 2009 to reflect an increase in the cost of living index is consistent with the EAJA and is the appropriate rate to be applied to attorney's fees for the calendar years 2008 and 2009 respectively.[10] For these reasons, Plaintiff's Application for Attorney's Fees Pursuant to the Equal Access to Justice Act (Doc. 27) is due to be **GRANTED**. Defendant is directed to remit to Plaintiff[11] the sum of **$2,554.41** for attorney's fees.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on May 7, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[10] Plaintiff provided the Court with adequate evidence of the increased cost of living between 1996 (the last time the EAJA was amended) and 2008 (*see* Doc. 27-4) and 2009. (S*ee* Doc. 27-5.) Therefore, Plaintiff's requested hourly rates are consistent with the calculation approved by this Court in *Gates*, 325 F. Supp. 2d at 1347-48.

[11] Evidence that Plaintiff has assigned her rights to EAJA fees to her counsel was not included with Plaintiff's petition for attorney's fees. Accordingly, consistent with *Reeves v. Astrue*, the Court is directing that the fees be remitted to Plaintiff. 526 F.3d 732 (11th Cir. 2008).